665 A.2d 1172

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Joseph HARRIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 26, 1994.

Decided Oct. 18, 1995.

John W. Packel, Stuart B. Lev, Philadelphia, for J. Harris.

Catherine Marshall, Philadelphia, Hugh J. Burns, Jr., Philadelphia, for Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

*OPINION*

CASTILLE, Justice.

The issue in this appeal from the order of the Superior Court affirming the judgment of sentence of the trial court is whether the trial court erred by refusing to give a self-defense instruction. For the reasons expressed below, we sustain the order of the Superior Court affirming appellant's judgment of sentence.

A summary of the evidence giving rise to appellant's criminal conviction is that the victim, Thomas Hooper, was returning his son after a visitation to the son's mother, appellant Joseph Harris' wife. Upon arriving at Harris' home, Harris and the victim's son began to argue. Hooper interceded,

urging his son and appellant to calm down and suggesting to appellant that if appellant attempted to provide for the boy, perhaps the boy would show appellant more respect. Appellant did not verbally respond to this rebuke but instead turned and went up the stairs of his house. Appellant's wife started up the stairs after appellant to check on him only to be met by the barrel of appellant's shotgun in her face and to hear appellant threatening to blow "her brains out." At this point a shot was fired, striking Hooper in the chest.

Appellant's testimony, not surprisingly, reveals a different version of what took place. Appellant testified that he only went upstairs to retrieve his shotgun in an effort to defend himself because he observed the butt of a gun tucked into the victim's trousers and that the victim had threatened to shoot him. Appellant claimed that his shotgun went off accidentally when his wife and the victim attempted to wrestle the shotgun from his possession. In contrast, the victim testified that he became alarmed because appellant had the shotgun pointed at his former wife's face threatening to shoot her. The victim approached appellant in an attempt to discourage appellant from shooting his former wife when appellant suddenly turned the shotgun on the victim. The victim testified that he then raised his left hand to deflect the barrel of the shotgun, when he felt the sting of the weapons' discharge. The victim further testified that he did not have a weapon, that he did nothing to anger appellant, and that appellant without apparent provocation shot him. As a result of the shooting, the victim spent twenty-seven days in the hospital, underwent eighteen hours of surgery to remove the shotgun pellets and has sustained permanent damage to nerve endings in his right arm. The police did not recover any weapon which the appellant asserted that he had observed in the victim's waistband at the scene of the shooting.

After hearing the evidence, the jury convicted appellant of aggravated assault,[1] simple assault,[2] reckless endangerment,[3]

1. 18 Pa.C.S. § 2702.
2. 18 Pa.C.S. § 2701.
3. 18 Pa.C.S. § 2705.

and possession of an instrument of crime.[4]  Post-verdict motions were denied and appellant was sentenced to concurrent terms of five (5) to ten (10) years, two and one half (2½) to five (5) years, and one (1) to two (2) years imprisonment.  By order and memorandum opinion, the Superior Court affirmed the judgment of sentence.  This Court granted allocatur.

▇▇▇▇ . Appellant claims that the trial court committed reversible error by refusing to give a self-defense instruction.[5] In order to establish self-defense in this situation where appellant used deadly force upon another, it must be shown that a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force;  b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom;  and c) the actor did not violate any duty to retreat or to avoid the danger.  *Commonwealth v. Myrick,* 468 Pa. 155, 360 A.2d 598 (1976); *Commonwealth v. Cropper,* 463 Pa. 529, 345 A.2d 645 (1975);  18 Pa.C.S. § 505. In the instant case, appellant unequivocally testified that the shooting was an accident and that he was not in fear of his life:

Q: And, you were going to protect your home with an unloaded shotgun;  is that right?

A: Yes.

Q: What were you going to do, sir?  It was unloaded.

A: Well, I seen people back up if they see the object.

Q: So, you came downstairs with an unloaded shotgun. Thomas Hooper didn't back away;  did he?

4.  18 Pa.C.S. § 907.

5.  Appellant also claims that he is entitled to a new sentencing hearing because his five year mandatory sentence for aggravated assault is "unconstitutionally disproportionate."  In support of this claim, appellant contends that aggravated assault is a lesser included offense of attempted murder and therefore aggravated assault merges with attempted murder.  However, appellant fails to recognize that he was never charged with, convicted of or sentenced for attempted murder, the offense with which he claims his aggravated assault conviction should merge.  Therefore, this claim is spurious and warrants no further review by this Court.

138

A: No, [he] didn't.

Q: So, it was only then you thought I better go back up stairs and load the shotgun; is that what you thought sir?

A: Well, I went back up stairs to think things out and then I decided to put the shotgun shell in.

Q: So, you thought about it for awhile, is that right?

A: Right.

Q: And, Thomas Hooper, he never came up the steps after you; did he, sir?

A: No, he never did, but he was inching for the steps.

Q: But, he never came up to where you were; was he?

A: No.

Q: So, you loaded that shotgun; is that right?

A: Yes.

Q: What did you cock the hammer for, sir?

A: You can't shoot until you cock the hammer back.

Q: So, you knew that you were going to shoot the gun?

A: No.

Q: So, why cock the hammer if you're not sure you're going to shoot the gun?

A: To protect myself because I know him to carry a gun in the past.

Q: That's how the gun went accidentally off?

A: It went off because of me backing up, is from my wife trying to grab it, and he trying to grab it.

\*     \*     \*     \*     \*     \*

Q: How did you know you were going to the district?

A: Because of the way the situation looks, because I know they had to get a report.

Q: Because you knew you did something wrong; didn't you, sir?

A: No.  It was self-defense, but it was an accident of me backing up the steps.

Q: Was it an accident, sir, or was it self-defense, because they are not the same thing.

A: Well, accident; excuse me on that.

Q: So, if it was an accident you were not fearful for your life; is that right?

A: That is right.

Q: Your life was not in jeopardy if it was an accident.

A: No.

N.T., 1/23/92, pp. 228–236.

Clearly, based upon appellant's own testimony, he did not believe that he was in imminent danger of death or serious bodily harm nor did he intentionally shoot the victim to protect himself.

Appellant, by his own testimony, calmly and deliberately went upstairs, went to the front bedroom, secured his shotgun (knowing that it was not loaded), came back downstairs and told his wife that he just wanted the victim to leave. Thereafter, appellant went back upstairs, grabbed ammunition, loaded it into his shotgun, readied the weapon to fire and went back downstairs to confront the victim. Appellant himself admits that he cocked the shotgun even though the victim had neither moved from his spot nor displayed a firearm. This evidence clearly demonstrates that appellant was not in fear of imminent danger of death or great bodily injury. Moreover, appellant testified that his life was not in jeopardy. As this evidence clearly negates self-defense, the trial court, therefore, properly refused to give a self-defense charge. *See e.g. Commonwealth v. Webster*, 490 Pa. 322, 326, 416 A.2d 491, 492 (1980) (defendant's testimony that the gun discharged accidentally negated element of self-defense that appellant reasonably believed that he was in imminent danger of death or great bodily harm).

■ We also note that the defense of self-defense necessarily requires that the appellant admit that the shooting was intentional in order to protect one's self. *See Commonwealth v. Hobson*, 484 Pa. 250, 258, 398 A.2d 1364, 1368 (1979)

(defendant not entitled to instruction that the element of the "lawful act" in the defense of misadventure is satisfied because defendant's act of drawing the gun was done in self-defense where defendant's testimony was that the shooting was not intentional). However, when he took the stand and denied that the shooting was intentional and, instead, said it was caused by mistake or accident as he backed up the stairs, he denied that the act was done intentionally in defense of self. Under such circumstances, therefore, a defense of self-defense is not available to such a person because it is mutually exclusive of the defense of accident or mistake. *See Commonwealth v. Hinchcliffe,* 479 Pa. 551, 557, 388 A.2d 1068, 1071 (1978), *cert. denied,* 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978) (self-defense and malice are mutually exclusive concepts since a finding of self-defense negates all elements of homicide); *see also Commonwealth v. Gay,* 489 Pa. 17, 21, 413 A.2d 675, 677 (1980) (since defendant denied shooting the victim, there is no issue of self-defense); *Commonwealth v. Powers,* 484 Pa. 198, 202, 398 A.2d 1013, 1014 (1979) (there is no trial court error for failure to charge on self-defense where defendant denied stabbing the victim); *Commonwealth v. Young,* 460 Pa. 598, 600, 334 A.2d 252, 253 (1975) (no self-defense or alibi instruction required where defendant's trial testimony negated elements of defenses); *Commonwealth v. Pavillard,* 421 Pa. 571, 572, 220 A.2d 807, 808 (1966) (where defendant denied grabbing gun and denied knowledge of shooting, homicide by misadventure was not at issue); *Commonwealth v. Jones,* 507 Pa. 580, 582, 493 A.2d 662, 663 (1985), *cert. denied,* 480 U.S. 909, 107 S.Ct. 1356, 94 L.Ed.2d 526 (1987) (voluntariness of statement is not at issue where defendant denied making statement).

Accordingly, the order of the Superior Court affirming the judgment of sentence is affirmed.

PAPADAKOS, J., did not participate in the decision of this matter.

MONTEMURO, J., is sitting by designation.